UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ROBERTO VAZQUEZ, individually and
on behalf of all others similarly situated,

                Plaintiff,                          MEMORANDUM
                                            AND ORDER

    -against-                                  21 CV 4528 (RML)

COUSINS GROCERY AND GRILL INC.
d/b/a COUSINS DELI, and GUYTREE
KULDIP, as an individual,

                Defendants.
-----------------------------------------------------X

LEVY, United States Magistrate Judge:

        This case is before me on consent of the parties, pursuant to 28 U.S.C. § 636.

(See Consent to Magistrate Judge Jurisdiction, dated Oct. 17, 2023, Dkt. No. 24.)  Plaintiff

Roberto Vazquez ("plaintiff" or "Vazquez") filed this case on August 11, 2021, asserting claims

under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA") and New York Labor

Law ("NYLL").  (See Complaint ("Compl."), filed Aug. 11, 2021, Dkt. No. 1.[1])  I held a one-day

bench trial on June 11, 2024, at which plaintiff and witness Navin Premdas testified.  (See

Transcript of Trial, dated June 11, 2024 ("Tr."), Dkt. No. 30.)  The parties submitted post-trial

briefing.  (Plaintiff's Post-Trial Brief, dated Aug. 12, 2024 ("Pl.'s Post-Trial Br."), Dkt. No. 31;

Defendants' Findings of Fact and Conclusions of Law, dated Sept. 26, 2024 (Defs.' Post-Trial

Br."), Dkt. No. 32; Plaintiff's Reply, dated Oct. 11, 2024, Dkt. No. 33.)

        After considering the evidence introduced at trial, the arguments of counsel and

the controlling law on the issues presented, I make the following findings of fact and conclusions

---

[1]  Plaintiff initially filed this case as a collective action, but no opt-in plaintiffs joined the case
and there was no motion for collective certification.

of law as required by Federal Rule of Civil Procedure 52(a).  For the reasons stated below, I find in favor of plaintiff and award him $136,212 in unpaid wages and liquidated damages, plus prejudgment and post-judgment interest.

## STANDARD OF REVIEW

"In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately."  FED. R. CIV. P. 52(a)(1). "The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court."  Id.  "The 'preponderance of evidence' standard is the traditional standard in civil and administrative proceedings."  Wang v. XBB, Inc., No. 18 CV 7341, 2022 WL 912592, at *3 (E.D.N.Y. Mar. 29, 2022) (quoting Hassoun v. Searls, 968 F.3d 190, 202 (2d Cir. 2020)).

## FINDINGS OF FACT

Defendant Cousins Grocery and Grill Inc. ("Cousins Grocery and Grill") is a store and deli located at 9-10 34th Avenue in Queens, New York.  (Tr. at 58.)  Plaintiff testified that he worked at Cousins Grocery and Grill from 2014 until June 10, 2021.  (Id. at 9:22-10:2.)  His duties included delivery, cleaning, filling soda machines, assisting in the kitchen, and dishwashing, and he was hired by manager Armando Torres, who determined his working hours. (Id. at 10:3-8, 19:4-11.)  He stated that he worked from 7:00 a.m. to either 5:00 p.m. or 6:00 p.m. six days per week, and took no vacations or time off.  (Id. at 11:11-17.)  According to plaintiff, he was paid $350 per week in cash and received approximately $25 to $30 in tips per day.  (Id. at 11-14.)  Plaintiff testified that he had a few bicycle accidents while making deliveries, but did not lose time from work due to those injuries.  (Id. at 24-28.)  On cross-examination, plaintiff stated that Mr. Torres fired him in 2017 for lateness, but re-hired him three days later.  (Id. at 34:13-

2

35:19.)  He also recalled one occasion when he was told to leave work early.  (Id. at 35:20-21.)

Finally, he identified both Navin Premdas and defendant Guytree Kuldip as "the owners" who, in

addition to Mr. Torres, directed his duties and paid him.  (Id. at 36:20-38:8.)

   Defendants presented one witness, Navin Premdas, who testified that he ran

Cousins Grocery and Grill with Mr. Torres, but that his spouse, defendant Guytree Kuldip, never

worked in the store.  (Id. at 39:22-40:5.)  Mr. Premdas stated that plaintiff often drank alcohol at

work, was under the influence "[a] lot of times[,] [t]oo many times," and was sent home early

about twenty times, as well as fired and re-hired repeatedly.  (Id. at 41:4-42:25; see also id. at

52:5-9 ("[Vazquez] never worked continuously.  He always work for a month and a half and he

got fired.  Then he come back, then he work for a month and a half, two months, get fired.  It was

like that all the time.").)  According to Mr. Premdas, plaintiff cumulatively lost about one year of

work between 2014 and 2021, in addition to six months in 2018 or 2019 when plaintiff missed

work due to foot surgery.  (Id. at 43.)  Mr. Premdas also testified that the store closed for

approximately one month in 2020 because of the Covid pandemic.  (Id. at 49:16-50:9.)

   As for plaintiff's pay, Mr. Premdas explained that from 7:00 a.m. to 1:00 p.m.,

plaintiff's pay consisted exclusively of delivery tips.  (Id. at 45:21-46:4.)  Then, from 1:00 p.m.

to 3:00 p.m., plaintiff was paid $250 per week.  (Id. at 46:7-8.)  After he returned from his foot

surgery in 2018 or 2019, when plaintiff was no longer able to make deliveries, defendants raised

his pay to $350 per week.  (Id. at 46:8-12.)

   With respect to ownership of Cousins Grocery and Grill, defendants submitted

documents to establish that the business was incorporated on June 4, 2020 and is owned by Mr.

Premdas.  (See id. at 54, 59:6-11, Defs.' Ex. 1.)  Prior to that, a company named NGP owned the

store starting in 2012.  (Id. at 55-57.)  NGP was purportedly owned by defendant Guytree

Kuldip. (Id. at 59:5.) Before that, the business was known as Cousins Deli and was owned by

Mr. Premdas. (Id. at 59:10-11.) From 2012 to 2020, Ms. Kuldip took care of financial matters

such as workers' compensation and insurance. (Id. at 63:4-6.) Since the business was started,

Mr. Premdas has managed the day-to-day operations of the store. (Id. at 60:21-61:3.) According

to Mr. Premdas, Ms. Kuldip has little involvement in the business; she visits occasionally, but

does not direct or supervise employees. (Id. at 61:13-62:10.)

CONCLUSIONS OF LAW

Plaintiff claims that he is entitled to minimum and overtime wages under the

FLSA and NYLL, spread of hours pay under NYLL, and statutory damages under NYLL for

defendants' failure to provide wage notices and wage statements. Plaintiff also seeks to recover

attorney's fees and costs. For the reasons stated below, I find that plaintiff has proved by a

preponderance of the evidence that Cousins Grocery and Grill violated the minimum wage and

overtime provisions of the NYLL, but that he has not proved his other claims.

## I.    FLSA Claims

"Under the FLSA, an employer must pay minimum and overtime wages if the

employee either '1) is engaged in commerce or in the production of goods for commerce, or 2) is

employed in an enterprise engaged in commerce or in the production of goods for commerce.'"

Ying Ying Dai v. ABNS NY Inc., 490 F. Supp. 3d 645, 653 (E.D.N.Y. 2020) (quoting Jacobs v.

N.Y. Foundling Hosp., 577 F.3d 93, 96-97 (2d Cir. 2009)); see also 29 U.S.C. §§ 206, 207(a)(1)).

The FLSA defines an "[e]nterprise engaged in commerce or in the production of goods for

commerce" as an enterprise that:

> (i) has employees engaged in commerce or in the production of goods for
> commerce, or that has employees handling, selling, or otherwise working on
> goods or materials that have been moved in or produced for commerce by any
> person; and (ii) is an enterprise whose annual gross volume of sales made or

business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1)(A).  "The question of whether a defendant qualifies as an enterprise under the FLSA is not a jurisdictional issue, but an element that a plaintiff must establish in order to prove liability."  Ying Ying Dai, 490 F. Supp. 3d at 654 (quoting Benitez v. F & V Car Wash, Inc., No. 11 CV 1857, 2012 WL 1414879, at *1 (E.D.N.Y. Apr. 24, 2012)) (alteration adopted).

Plaintiff alleged in his complaint that he "was engaged in commerce or the production of goods for commerce," (Compl. ¶ 47), and that Cousins Grocery and Grill

engaged in interstate commerce within the meaning of the FLSA in that the entity (i) has had employees engaged in commerce or in the production of goods for commerce, and handle, sell or otherwise work on goods or material that have been moved in or produced for commerce by any person; and (ii) has had an annual gross volume of sales of not less than $500,000.

(Id. ¶ 20.)  However, defendants denied these allegations in their Answer (see Answer, dated Sept. 30, 2021, Dkt. No. 11, ¶ 1), and no evidence was presented at trial concerning plaintiff's or Cousins Grocery and Grill's use or handling of goods or material moved in or produced for commerce, or the business's gross annual volume of sales.  Accordingly, I find that plaintiff failed to meet his burden of showing that defendants were employers as defined under the FLSA.  Plaintiff's FLSA claims are therefore dismissed.

## II.    Supplemental Jurisdiction

Although there are no remaining federal claims over which the court has original jurisdiction in this case, the court may exercise supplemental jurisdiction over plaintiff's NYLL claims because doing so at this point in the litigation "promote[s] the values articulated in [United Mine Workers of America v.] Gibbs[, 383 U.S. 715 (1966)]: economy, convenience, fairness, and comity."  Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 85 (2d Cir. 2018) (quoting Jones v. Ford Motor Credit Co., 358 F.3d 205, 214 (2d Cir. 2004)).  "Indeed, declining

jurisdiction would have the opposite effect." Mejia v. Ke Lai Xiang No. One Rest. Inc., No. 21 CV 6664, 2025 WL 964015, at *5 (E.D.N.Y. Mar. 31, 2025).  This case has been pending in this court for nearly four years.  "[P]laintiff's testimony at the bench trial is relevant to his federal and state law claims, the parties filed post-trial briefs on both sets of claims, and this case includes 'no issues of special state court expertise nor any novel questions of state law or state-law causes of action that would be better decided in state court.'" Id. (quoting Catzin, 899 F.3d at 86).  Accordingly, I next consider plaintiff's state law claims under NYLL.

### III.    NYLL Claims

"New York's Labor Law is the state analogue to the federal FLSA," but it "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of annual sales." Valdez v. H & S Rest. Operations, Inc., No. 14 CV 4701, 2016 WL 3079028, at *3 (E.D.N.Y. Mar. 29, 2016) (citations and quotation marks omitted), report and recommendation adopted, 2016 WL 3087053 (E.D.N.Y. May 27, 2016).  Therefore, plaintiff's NYLL claims "do not suffer the same infirmities as his claims under the FLSA." Mejia, 2025 WL 964015, at *5.

The statute of limitations for NYLL claims is six years.  See N.Y. LAB. L. § 663(3); see also Blanco v. M&R Plaza Deli Inc., No. 23 CV 9408, 2024 WL 4859467, at *2 (E.D.N.Y. Oct. 29, 2024), report and recommendation adopted, 2024 WL 4855214 (E.D.N.Y. Nov. 21, 2024) ("plaintiff's claims must arise within six years prior to the filing of the complaint to be timely under the NYLL.").  Plaintiff initiated this action on August 11, 2021, so I consider claims for the period from August 11, 2015 onward.

a. <u>The Employment Relationship</u>

"The NYLL's definition of employer is nearly identical to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors." <u>Mejia</u>, 2025 WL 964015, at *6 (citations and internal marks omitted).  Where the FLSA describes an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), NYLL defines "employer" as "any person . . . employing any individual in any occupation," N.Y. LAB. L. § 190(3).  "[E]mployment for FLSA [and NYLL] purposes [is] a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." <u>Mejia</u>, 2025 WL 964015, at *6 (quoting <u>Irizarry v. Catsimatidis</u>, 722 F.3d 99, 104 (2d Cir. 2013)).  "Indeed, an individual may simultaneously have multiple employers for the purposes of the FLSA and NYLL, in which case, all joint employers are responsible, both individually and jointly, for compliance with all applicable provisions of the statutes." <u>Id.</u> (alterations adopted) (citation and marks omitted).

For NYLL purposes, "[t]he underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees[.]" <u>Tapia v. BLCH 3rd Ave. LLC</u>, 906 F.3d 58, 61 (2d Cir. 2018). "[T]o be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." <u>Irizarry</u>, 722 F.3d at 109.  "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." <u>Id.</u> at 110.  It is not sufficient to show that the individual defendant "is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function." <u>Id.</u> at 109.

This inquiry is context-specific and guided by the "economic reality" of the employment relationship.  Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008) (quoting Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961)).  The court may consider the following factors in deciding whether a defendant was an employer under the NYLL: "[W]hether the alleged employer '(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'"  Tapia, 906 F.3d at 61 (quoting Barfield, 537 F.3d at 142).  "No one of the four factors standing alone is dispositive."  Id.

Plaintiff seeks to hold two defendants—one corporation and one individual—liable.  (Compl. ¶¶ 9-18.)  It is undisputed that plaintiff was employed by Cousins Grocery and Grill, at least for the period of June 4, 2020 to June 10, 2021.  (See Defs.' Post-Trial Br. ¶ 3.)  With respect to the individual defendant, Guytree Kuldip, the relevant inquiry is whether she "possessed operational control over employees" like plaintiff.  Tapia, 906 F.3d at 61.  Plaintiff's counsel did not call Ms. Kuldip to the witness stand, even though she was present in the courtroom during the trial.  Nor did plaintiff make any specific reference to her in his testimony, other than to gesture toward both Mr. Premdas and Ms. Kuldip as "the owners."  (Tr. at 10:16-20.)  Plaintiff's testimony was vague as to who hired, supervised, and paid him.[2]  Without more

---

[2]  Plaintiff did testify that both of "the owners," meaning Mr. Premdas and Ms. Kuldip, supervised and paid him, but mainly by answering "yes" to leading questions:

    Q.  Did any of those – these individuals supervise you at Cousins Deli?
    A.  Yes.
    Q.  Okay.  Both of these individuals in the courtroom; is that right?
    A.  Yes.

(Tr. at 10:24-11:4.)

    Q.  And who handed you your pay every week?

Continued . . .

compelling evidence to establish Ms. Kuldip's role in running the business, I find that plaintiff

has not met his burden of proving by a preponderance of the evidence that she was his employer

for purposes of the NYLL.  Therefore, the claims against Guytree Kuldip are dismissed.

With respect to the corporate defendant, Cousins Grocery and Grill, defendants'

counsel presented uncontroverted evidence that the company was incorporated on June 4, 2020.

(Tr. at 54:3-20; Defs.' Ex. 1.)  However, plaintiff contends that he was employed by the

predecessor companies, Cousins Deli and NGP, and that Cousins Grocery and Grill is therefore

subject to successor liability for the entire statutory period from 2015 through June 10, 2021.

(See Pl.'s Post-Trial Br. at 9-11.)

Federal courts sitting in New York employ either a New York common law

standard or a "substantial continuity" test in determining whether a defendant may be held liable

for a previous employer's labor law violations.  Xue Ming Wang v. Abumi Sushi, Inc., 262 F.

Supp. 3d 81, 87-89 (S.D.N.Y. 2017).  Under the common law test, a business's buyer is liable for

the seller's debts when "(1) a buyer . . . formally assumes a seller's debts; (2) [the] transactions

[are] undertaken to defraud creditors; (3) a buyer . . . de facto merged with a seller; [or] (4) a

buyer . . . is a mere continuation of a seller."  Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41,

45 (2d Cir. 2003); see also Duchitanga v. 43 Ave. Top N' Quality Corp., No. 17 CV 1145, 2021

WL 7906539, at *9 (E.D.N.Y. Sept. 13, 2021).

The more liberal "substantial continuity" test "involves consideration of at least

three factors: (1) whether the successor company had notice of the charge or pending lawsuit

---

A.  They did.  The owners.
Q.  The individuals in the courtroom today; is that correct?
A.  Yes.
(Tr. at 12:13-16.)  On cross-examination, plaintiff testified that Mr. Torres hired him, established
his hours, and managed the store on a daily basis.  (Tr. at 19-20.)

prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to

provide relief; and (3) whether there has been a substantial continuity of business operations."

Guangcheng Chen v. Matsu Fusion Rest. Inc., No. 19 CV 11895, 2020 WL 6135764, at *4

(S.D.N.Y. Oct. 16, 2020) (citing Abumi Sushi, 262 F. Supp. 3d at 89-90).  Courts may also

consider the following additional factors, which are given less weight than the first three "more

significant" factors:

> (4) whether the new employer uses the same plant; (5) whether [it]
> uses the same or substantially the same work force; (6) whether [it]
> uses the same or substantially the same supervisory personnel; (7)
> whether the same jobs exist under substantially the same working
> conditions; (8) whether [it] uses the same machinery, equipment,
> and methods of production; and (9) whether [it] produces the same
> product.

Diaz v. Slayton One Cleaner Inc., No. 17 CV 1311, 2018 WL 4935831, at *4 (S.D.N.Y. Oct. 11,

2018) (quoting Bautista v. Beyond Thai Kitchen, Inc., No. 14 CV 4335, 2015 WL 5459737, at

*5 (S.D.N.Y. Sept. 17, 2015)).  Under either test, the party asserting successor liability has the

burden of proof.  Diaz, 2018 WL 4935831, at *4 (citing Abumi Sushi, 262 F. Supp. 3d at 92).

Plaintiff has presented no evidence of a sale of the business.  Accordingly, the

common law test does not apply.  However, plaintiff has shown that the business under its new

ownership was a "mere continuation" of the business by the previous corporate owner.  See

Nguyen v. Pho Vietnam 87 Corp., No. 23 CV 4298, 2025 WL 564546, at *7 (S.D.N.Y. Jan. 31,

2025), report and recommendation adopted, 2025 WL 562763 (S.D.N.Y. Feb. 19, 2025) (holding

defendants liable for violations of the NYLL and FLSA under a theory of successor liability

where new owners continued the unlawful pay practices of the prior owners and used the same

location, machinery, and equipment; employed the same employees; and operated the same

business as the previous owners); Duchitinga, 2021 WL 7906539, at *10 (finding successor

10

liability under the substantial continuity test where new owner "continued [the] unlawful payroll practices" and the business remained at the same location, operated under the same name, used the same equipment, employed much of the same workforce, and continued to offer the same services); Payamps v. M & M Convenience Deli & Grocery Corp., No. 16 CV 4895, 2019 WL 8381264, at *10-11 (E.D.N.Y. Dec. 9, 2019) (granting default judgment under theory of successor liability where plaintiff established that the business was a "mere continuation" because the business "retain[ed] the same location and s[old] the same goods"). Indeed, Mr. Premdas admitted that he has been involved in running the store since it opened, and continued to manage the store's operations as corporate ownership switched back and forth between him and his wife. (Tr. at 60-61.) Both plaintiff and Mr. Premdas also testified that Mr. Torres was a manager and supervisor for the entire applicable period. (E.g., Tr. at 10, 19-20, 34-35, 39-40.) And it is undisputed that the store remained in the same location and operated as a deli and grocery throughout the relevant timeframe. I therefore find that defendant Cousins Grocery and Grill is liable as plaintiff's employer for the entire statutory period from June 10, 2015 through June 10, 2021.

      b. Unpaid Wages

"Although a plaintiff generally has the burden of proving that he performed work for which he was not properly compensated, when an employer has inaccurate or inadequate records, the plaintiff has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Mejia, 2025 WL 964015, at *7 (citations and internal quotation marks omitted); see also N.Y. LAB. L. § 195(4) (requiring employers to maintain payroll records). The Second Circuit has noted that this burden

"is not high" and may be satisfied through an employee's "estimates based on his own recollection." Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011).

While a plaintiff's recollection, alone, may be sufficient to establish a rebuttable presumption that he worked certain hours for which he was not compensated, "such testimony only establishes such a presumption if the testimony is credible." Java v. El Aguila Bar Rest. Corp., No. 16 CV 6691, 2018 WL 1953186, at *2 (S.D.N.Y. April 25, 2018) (internal quotations omitted) (quoting Romero v. Rung Charoen Sub, Inc., No. 16 CV 1239, 2017 WL 4480758, at *4 (E.D.N.Y. Sept. 30, 2017)); see also Daniels v. 1710 Realty LLC, 497 F. App'x 137, 139 (2d Cir. 2012) (summary order) (affirming the district court's determination that plaintiff did not meet his burden because the testimonial evidence he presented was not credible).  If an employee satisfies this initial showing, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 456 (2016) (internal quotations and citation omitted); see also Kuebel, 643 F.3d at 362.  "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate." Gonzalez v. Masters Health Food Serv., Inc., No. 14 CV 7603, 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (internal quotations omitted) (quoting Kuebel, 643 F.3d at 362); see also Canelas v. World Pizza, Inc., No. 14 CV 7748, 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017) (explaining that a similar burden-shifting framework applies under both the FLSA and the NYLL.)

As an initial matter, in calculating plaintiff's unpaid wages, I have disregarded any evidence concerning delivery tips plaintiff received.  Under the NYLL, an employer may not claim a tip credit as to an employee's wages unless the employer has informed that employee of

the provisions of the law permitting the tip credit.  See 12 N.Y.C.R.R. § 146-1.3 ("An employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips and if the employee has been notified of the tip credit as required in section 146-2.2 of this Part.").  "Notice of the tip credit under the NYLL must be written." Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 501 (S.D.N.Y. 2017), aff'd, 752 F. App'x 33 (2d Cir. 2018).  Thus, "[p]rior to the start of employment, an employer shall give each employee written notice of . . . the amount of tip credit, if any, to be taken from the basic minimum hourly rate. . . . The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate."  12 N.Y.C.R.R. § 146–2.2(a).  This notice must be written in both English and "any other language spoken by the new employee as his/her primary language."  Id. § 146–2.2(a)(1)–(2).  Moreover, once an employer has provided written notice of this tip credit, the employer must obtain "acknowledgement of receipt signed by the employee," and that signed acknowledgement must "be kept on file for six years."  Id. § 146–2.2(c).

"The burden is on the [employer] to show that [it has] complied with the [NYLL's] tip notice requirement."  Salustio v. 106 Columbia Deli Corp., 264 F. Supp. 3d 540, 554 (S.D.N.Y. 2017) (citation omitted).  "An employer who fails to provide the required notice is liable for the difference between the full minimum wage rate and what the employee was actually paid."  Id.  Since defendants presented no evidence that plaintiff was given notice, written or otherwise, that tips he received would be used to fulfill his employer's obligations to pay him a minimum wage, defendants are liable for the difference between what plaintiff was paid each week and New York's minimum wage rates for August 2015 through June 2021.

During the relevant time period, the minimum wage for New York City businesses with fewer than eleven employees was $8.75 per hour on and after December 31, 2014; $9.00 per hour on and after December 31, 2015; $10.50 per hour on and after December 31, 2016; $12.00 per hour on and after December 31, 2017; $13.50 per hour on and after December 31, 2018, and $15.00 per hour on and after December 31, 2019.  N.Y. Lab. L. § 652. To determine an employee's hourly rate, the employee's total weekly earnings are divided "by the lesser of 40 hours or the actual number of hours worked by that employee during the work week."  12 N.Y.C.R.R. § 146-3.5(b).  Plaintiff testified that he was paid $350 per week in cash for the entire length of his employment.  (Tr. at 11:18-14; see also Damages Calculation, annexed as Ex. 2 to Pl.'s Post-Trial Br.)  Defendants have not disputed that assertion.  (Tr. at 46.)

With regard to the number of hours plaintiff worked per week, I have considered the testimony and observed the demeanor of both plaintiff and Mr. Premdas, and I find Mr. Premdas more credible.  Thus, even without proper payroll records, I give his testimony more weight in determining plaintiff's working hours.  Plaintiff stated that he worked an average of ten hours per day, six days per week, for a total of sixty hours per week.  (Tr. at 11-12; see also Damages Calculation.)  Mr. Premdas, by contrast, stated that plaintiff typically worked from 7:00 a.m. to 3:00 p.m., when the store closed.  (Tr. at 45.)  Crediting Mr. Premdas's testimony that plaintiff worked eight hours per day six days per week results in a finding that plaintiff worked forty-eight hours per week.  $350 divided by forty hours per week results in a regular hourly wage of $8.75.  Accordingly, plaintiff is entitled to recover minimum wages for forty hours per week as follows:

| Time Period | Minimum Wage | Rate of Pay | Difference | Hours Worked | Total |
|---|---|---|---|---|---|
| 1/1-12/30/2016 | $9.00 | $8.75 | $.25 | 2,080 | $520 |
| 1/1-12/31/2017 | $10.50 | $8.75 | $1.75 | 2,080 | $3,640 |

14

| | | | | |
|---|---|---|---|---|
| 1/1-12/31/2018 | $12.00 | $8.75 | $3.25 | 2,080 | $6,760 |
| 1/1/-12/31/2019 | $13.50 | $8.75 | $4.75 | 2,080 | $9,880 |
| 1/1/2020-6/10/2021 | $15.00 | $8.75 | $6.25 | 3000 | $18,750 |
| **TOTAL Minimum Wages Owed:** | | | | | **$39,550** |

The NYLL characterizes an eight-hour day as a "legal day's work[.]" N.Y. LAB. L. § 160. Thus, under the NYLL, employers must also pay employees "for overtime at a wage rate of [one and one-half] times the employee's regular rate for hours worked in excess of 40 hours in one workweek." 12 N.Y.C.R.R. § 146-1.4; see also Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013) ("The FLSA mandates that an employee . . . be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week," and "the NYLL adopts this same standard.").

"'[T]he regular rate refers to the hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he is employed.'" Hernandez v. NJK Contractors, Inc., No. 09 CV 4812, 2015 WL 1966355, at *41 (E.D.N.Y. May 1, 2015) (quoting Walling v. Youngerman Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)). To calculate the overtime compensation plaintiff is owed, the number of hours he worked over forty each week is multiplied by 150 percent of the higher of (i) his regular rate of pay, or (ii) the applicable minimum wage. Jimenez v. Green Olive Inc., 744 F. Supp. 3d 221, 253 (E.D.N.Y. 2024). Accordingly, plaintiff is entitled to recover overtime wages for eight hours per week as follows:

| Time Period | Regular Rate or Minimum Wage | Overtime Rate | Overtime Hours Worked | Total |
|---|---|---|---|---|
| 8/11-12/31/2015 | $8.75 | $13.10 | 160 | $2,096 |
| 1/1-12/31/2016 | $9.00 | $13.50 | 416 | $5,616 |
| 1/1-12/31/2017 | $10.50 | $15.75 | 416 | $6,552 |
| 1/1-12/31/2018 | $12.00 | $18.00 | 416 | $7,488 |

15

| 1/1/-12/31/2019 | $13.50 | $20.25 | 416 | $8,424 |
|---|---|---|---|---|
| 1/1/2020-6/10/2021 | $15.00 | $22.50 | 600 | $13,500 |
| **TOTAL Overtime Wages Owed** | | | | **$43,676** |

This calculation leads to a total of $83,226 in minimum wages and overtime pay; however, I credit Mr. Premdas's testimony that the store was closed for one month at the beginning of the Covid pandemic in 2020, and that plaintiff missed work periodically. Since plaintiff should have received $780 per week in 2020, I will deduct $3,120 from the total. And on the assumption that plaintiff missed approximately fifteen additional weeks of work between August 2015 and June 2021, I will deduct an additional $12,000, for a total of $68,106 owed.

  c.  Spread of Hours Pay

New York law provides that "[o]n each day on which the spread of hours exceeds [ten], an employee shall receive one additional hour of pay at the basic minimum hourly rate." 12 N.Y.C.R.R. § 146-1.6. "Spread of hours" is defined as "the interval between the beginning and end of an employee's workday," and includes "working time plus time off for meals plus intervals off duty." Id.; see also Rodriguez v. Ridge Rest., Inc., No. 16 CV 254, 2020 WL 7711859, at *5 (E.D.N.Y. Dec. 29, 2020) (describing spread of hours law). Plaintiff stated that he worked an average of ten hours per day. (Tr. at 11.) Although plaintiff claimed that he sometimes worked until 6:00 p.m., which would bring the total hours above ten for that day, his testimony was vague about how often that occurred, and was contradicted by Mr. Premdas, who testified that plaintiff typically worked until 3:00 p.m., when the store closed (Tr. at 11-12, 45.) Accordingly, plaintiff has not met his burden on this claim, and his request for spread of hours pay is denied.

16

     d.  <u>Wage Notice and Wage Statements</u>

     The Wage Theft Prevention Act of the NYLL requires that employers provide each employee with annual wage notices and accurate wage statements each time wages are paid.  <u>See</u> N.Y. LAB. L. §§ 195(1)(a) and (3).  An employer is required to "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee . . . a notice containing . . . the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other . . .  allowances."  <u>Id.</u> § 195(1)(a).  Employers are also required to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof . . . allowances, if any, claimed as part of the minimum wage . . . and net wages."  <u>Id.</u> § 195(3).

     However, to have standing to maintain a wage notice or wage statement claim under the NYLL, a plaintiff must demonstrate that he suffered "downstream consequences resulting from the failure to receive [that] information."  <u>Pinzon v. 467 Star Deli Inc.</u>, No. 22 CV 6864, 2023 WL 5337617, at *11 (S.D.N.Y. July 31, 2023), <u>report and recommendation adopted</u>, 2023 WL 5334757 (S.D.N.Y. Aug. 18, 2023) (internal quotation marks and citation omitted).  An "informational injury" itself is insufficient to establish standing.  <u>Guthrie v. Rainbow Fencing Inc.</u>, 113 F.4th 300, 307 (2d Cir. 2024).  Instead, a plaintiff may successfully establish standing by "plausibly show[ing] that defective notices led him or her to lose wages. . . ."  <u>Id.</u> at 310.  For example, a plaintiff who argues that inadequate wage statements or notices deprived him or her of the opportunity to advocate for pay must show that "he or she would have undertaken such advocacy and plausibly would have avoided some actual harm[ ]."  <u>Id.</u> at 308.  Speculation and conjecture are insufficient to establish standing.  <u>Id.</u> at 309.

Plaintiff testified that he did not receive wage statements or wage notices (Tr. at 12:24-13:14), and defendants did not deny that assertion. However, plaintiff offered no evidence to show what he would have done differently to obtain higher wages had he been given wage statements and wage notices. Plaintiff's wage notice and statement claims are therefore dismissed for lack of standing.

## IV.    Damages

As discussed above, I find that plaintiff is owed $68,106 in unpaid wages. Plaintiff also seeks liquidated damages under NYLL, prejudgment and post-judgment interest, and attorney's fees and costs.

### a.    Liquidated Damages

Under § 198(1)(a) of the NYLL, the court may assess liquidated damages, calculated as no more than "one hundred percent" of the unpaid wages "unless the employer provides a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. LAB. L. § 198(1)(a); see also Feuer v. Cornerstone Hotels Corp., No. 14 CV 5388, 2020 WL 401787, at *11 (E.D.N.Y. Jan. 24, 2020) ("Liquidated damages in the amount of actual damages are . . . available under NYLL."). "The Second Circuit has described the employer's burden of proving good faith as 'a difficult one to meet' and has held that 'double damages are the norm, single damages the exception.'" Haifeng Xie v. Sakura Kai I Inc., No. 17 CV 7509, 2019 WL 1568756, at *8 (E.D.N.Y. Apr. 11, 2019) (quoting Reich v. S. New England Telecomms. Corp., 121 F.3d 58, 71 (2d Cir. 1997)). "The Second Circuit has also rejected the view that the absence of subjective malice or bad faith, on its own, is sufficient to invoke the exception." Id. Defendant Cousins Grocery and Grill has not attempted to put forth a good faith basis for believing it was paying Vazquez in compliance with the law. I therefore find that plaintiff is entitled to liquidated damages in the amount of $68,106.

     b.   Prejudgment Interest

Plaintiffs who prevail on NYLL wage claims are entitled to prejudgment interest on their "underpayment[s]."  N.Y. LAB. L. § 198(1–a).  Pursuant to N.Y. C.P.L.R. § 5001, an award of prejudgment interest is mandatory.  See Gussack Realty Co. v. Xerox Corp., 224 F.3d 85, 93 (2d Cir. 2000) ("[N.Y. C.P.L.R. § 5001] imposes an affirmative mandate on trial courts; they have no discretion not to award prejudgment interest under New York law").  "The applicable interest rate is 9% per annum, calculated 'from the date [each item] was incurred or upon all of the damages from a single reasonable intermediate date.'"  Feuer, 2020 WL 401787, at *12 (quoting N.Y. C.P.L.R. §§ 5001(b), 5004).  Prejudgment interest is not available "for any award of liquidated damages."  Estrada v. Giovanni's Italian Eatery, Inc., No. 16 CV 6152, 2020 WL 4917179, at *5 (S.D.N.Y. Aug. 20, 2020).

Plaintiff incurred damages from August 11, 2015 until June 10, 2021.  "Where a plaintiff incurs damages over a period of time, the prejudgment interest may be calculated from a single reasonable intermediate date."  Mejia, 2025 WL 964015, at *10 (citing N.Y. C.P.L.R. §§ 5004, 5001(b)).  "The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating pre-judgment interest" for damages awarded under the NYLL.  Beadle v. Forever Jerk LLC, No. 23 CV 9166, 2024 WL 3813374, at *8 (E.D.N.Y. July 31, 2024), report and recommendation adopted, 2024 WL 4528940 (E.D.N.Y. Oct. 18, 2024).  Accordingly, plaintiff is entitled to prejudgment interest on his unpaid wage damages of $68,106 from July 10, 2018—the midpoint of the period in which plaintiff incurred damages—until the date judgment is entered, at $16.79 a day (($68,106 × .09) / 365).

     c.   Post-Judgment Interest

Plaintiff is also entitled to post-judgment interest, which "shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a); see, e.g.,

<u>Fermin v. Las Delicias Peruanas Rest., Inc.</u>, 93 F. Supp. 3d 19, 53 (E.D.N.Y. 2015).

Accordingly, plaintiff is awarded post-judgment interest, to be calculated from the date the Clerk

of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C.

§ 1961.

      d.  <u>Attorney's Fees and Costs</u>

      Under NYLL, a prevailing plaintiff is entitled to an award of "reasonable"

attorney's fees and costs.  N.Y. LAB. L. § 663(1).  According to plaintiff's counsel, "[p]laintiff

has a retainer agreement with counsel that provides for counsel to recover thirty-three and a third

percent (33.3%) plus costs and expenses of any judgment or settlement awarded to the Plaintiff."

(Pl.'s Post-Trial Br. at 16.)  However, even where attorney's fees are sought pursuant to the

percentage method, "'counsel must submit evidence providing a factual basis for the award.'"

<u>Picorelli v. Watermark Contractors Inc.</u>, No. 21 CV 2433, 2022 WL 2386761, at *4 (S.D.N.Y.

July 1, 2022) (quoting <u>Wolinsky v. Scholastic Inc.</u>, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012));

<u>see also</u> <u>Guareno v. Vincent Perito, Inc.</u>, No. 14 CV 1635, 2014 WL 4953746, at *2 (S.D.N.Y.

Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with

contemporaneous time records.").  A proper fee request includes "'contemporaneous billing

records documenting, for each attorney, the date, the hours expended, and the nature of the work

done.'"  <u>Picorelli</u>, 2022 WL 2386761, at *4 (quoting <u>Lopez v. Nights of Cabiria, LLC</u>, 96 F.

Supp. 3d 170, 181 (S.D.N.Y 2015)).  Thus, counsel is directed to submit contemporaneous time

records to support the fee request, as well as documentation of costs and expenses.

<span style="font-variant:small-caps">Conclusion</span>

      For the reasons stated above, plaintiff is awarded the following amounts against

defendant Cousins Grocery and Grill, itemized as follows: (1) unpaid minimum wages and

overtime pay in the amount of $68,106; (2) liquidated damages in the amount of $68,106; and (3)

20

pre-judgment interest at the rate of $16.79 per day, from July 10, 2018 through the date judgment

is entered.  Plaintiff is also awarded post-judgment interest.  Plaintiff's counsel is directed to

submit contemporaneous time records and documentation to support its request for attorney's

fees and costs within thirty days of the date of this order.

        SO ORDERED.


_____/s/_____

ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
      May 13, 2025